IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02156-RBJ-MEH

VALERIE A. ELAM, individually and as Personal Representative of the Estate of Rickey Lee Elam,

    Plaintiff,

v.

THE CITY OF AURORA, a municipal corporation,

    Defendant.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim upon Which Relief may be Granted [filed October 31, 2011; docket #9]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #19]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. Based on the record contained herein, the Court RECOMMENDS that Defendant's motion be **granted in part and denied in part**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or

**BACKGROUND**

Plaintiff initiated this action on August 18, 2011 by filing a Complaint, the operative pleading in this matter. *See* docket #1.

**I.     Facts**

The following are factual allegations made by the Plaintiff in the Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Valerie Elam is the personal representative of the Estate of Rickey Lee Elam, and as his spouse, is entitled and authorized to prosecute this litigation. Rickey Lee Elam was arrested at approximately 5:00 a.m. on August 22, 2009 by Aurora police officers and charged with running a red light and driving under the influence of alcohol. Mr. Elam was booked into the Aurora Detention Center at which he was given an alcohol analyzer beginning at 6:09 and ending at 6:16 a.m. Mr. Elam's blood alcohol content was determined to be at least .164. As noted in the police report, Mr. Elam told a police officer at the time of his arrest that the was taking Amoxicilin and Vicodin. Mr. Elam was released from the Aurora Detention Center at approximately 7:30 a.m. on August 22, 2009. Mr. Elam's blood alcohol level was not tested again at the time of his release. No medical care or warnings of any risks of danger were provided to Mr. Elam before his release. Mr. Elam was released unsupervised; his wife and/or family were not called to pick him up.

At approximately 12:00 noon on August 22, 2009, Mr. Elam fell from a fourth floor balcony located at 1571 Beeler Street, Aurora, Colorado. Mr. Elam died from blunt force trauma. At the

---

adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

time of his death, Mr. Elam's blood alcohol level was .243. The Adams County Coroner could not determine whether Mr. Elam's death was a result of accident or suicide. Mr. Elam left behind his wife and four children.

## II.     Procedural History

Based upon the factual allegations made in the Complaint, the Plaintiff brings two claims for relief against the Defendant City of Aurora: (1) "Denial of Care" (deliberate indifference) in violation of the protection against cruel and unusual punishment of the Eighth Amendment, and in violation of the Due Process Clause of the Fourteenth Amendment, and (2) an "Unlawful Policy, Custom or Habit" in violation of the Eighth and Fourteenth Amendments for enforcement of an unconstitutional policy and deliberate failure to maintain, control, train, and supervise personnel at the Aurora Detention Center.

Defendant responded to Plaintiff's Complaint by filing the present motion to dismiss on October 31, 2011, arguing that it does not have a duty to protect arrestees after release from custody and that arrestees do not have a right to be held in custody. Further, Defendant contends that Plaintiff was, at all times relevant, a pretrial detainee and, thus, the Eighth Amendment does not apply to his detention. Finally, Defendant asserts that, even if Plaintiff had properly pled a conditions of confinement claim, any claim for inadequate or dangerous conditions only applies to incarcerated prisoners, not to persons harmed after their release.

Plaintiff responds that her allegations support claims for Defendant's failure to provide medical care for Mr. Elam, failure to ensure that Mr. Elam was sober, failure to ensure that Mr. Elam was not under the influence of drugs, and failure to warn Mr. Elam that he needed to take steps to ensure his own safety *before* he was released. Further, Plaintiff claims Defendant showed deliberate

indifference in failing to train, supervise and control detention officers to provide medical care to Mr. Elam and to determine or assess whether Mr. Elam was still intoxicated, or whether he was suicidal or mentally unstable before his release. Finally, Plaintiff contends the Defendant enforced an unconstitutional custom, policy or practice in releasing Plaintiff because the detention center was overcrowded, not because he was sober.

Defendant replies that Plaintiff has failed to cite any case law for support of her proposition that Defendant is liable for harms suffered by Mr. Elam after his release from the detention center. Defendant cites a First Circuit case with facts similar to those alleged here, in which the court found no constitutional claim for relief.

## LEGAL STANDARD

### I.      Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## II.     Treatment of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*.; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on

the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

**I.      Failure to State a Claim**

In its motion to dismiss, Defendant argues that the Eighth Amendment does not apply to the Plaintiff's detention as an "arrestee," and that Plaintiff's allegations fail to state a violation of the Fourteenth Amendment. The Court will address each argument in turn.

A.      <u>Does the Eighth Amendment Protect the Plaintiff Here?</u>

Taking Plaintiff's allegations as true, the Plaintiff alleges that Defendant's conduct resulting in harm to Mr. Elam occurred after he was arrested and before he was released on August 22, 2009. Accordingly, it is undisputed that Mr. Elam was an "arrestee" or "pretrial detainee" within the definitions established by the Supreme Court.

The Eighth Amendment applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977); *see also City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983) ("[b]ecause there had been no formal adjudication of guilt against [the arrestee] at the time he required medical care, the Eighth Amendment has no application."); *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979) ("Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under

the Eighth Amendment.").

Mr. Elam was not a sentenced inmate at the time of the alleged violations. Based upon Supreme Court precedent, then, the Court agrees with Defendant that the alleged conduct during Mr. Elam's detention is not proscribed by the Eighth Amendment, but rather, Mr. Elam, a pretrial detainee, may be protected by the Due Process Clause of the Fourteenth Amendment. *Lopez v. LeMaster*, 172 F.3d 756, 759 n. 2 (10th Cir. 1999) ("Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment."). Accordingly, this Court respectfully recommends that the District Court grant the Defendant's motion to dismiss any claims brought by the Plaintiff pursuant to the Eighth Amendment.

B. <u>Does the Defendant's Alleged Inaction During Detention Constitute a Violation of Due Process?</u>

Defendant argues that Plaintiff fails to overcome the rule of *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 196 (1989) that a government defendant is not a state actor and does not violate the U.S. Constitution for a plaintiff's harms inflicted by private parties, and fails to allege facts supporting claims under the exceptions to *DeShaney*'s rule.

The Fourteenth Amendment to the United States Constitution explicitly guarantees to each citizen that no state shall "deprive any person of life, liberty, or property, without due process of law...." U.S. Const., amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment contains a judicially recognized substantive due process component that protects an individual's life, liberty and property against "certain government actions regardless of the fairness of the procedures used to implement them." *Schnurr v. Board of Cnty. Comm'rs*, 189 F. Supp. 2d 1105, 1121 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

However, "[w]here a government official's act causing injury to life, liberty or property is

merely negligent, 'no procedure for compensation is *constitutionally* required.'" *Daniels*, 474 U.S. at 333 (quoting *Parratt v. Taylor*, 451 U.S. 527, 548 (1981)). Instead, the Fourteenth Amendment protects citizens from the arbitrary, abusive, or oppressive use of governmental power. *Schnurr*, 189 F. Supp. 2d at 1121 (citing *Daniels*, 474 U.S. at 332). "This basic principle of due process jurisprudence dictates that the Fourteenth Amendment does not confer an 'affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.'" *Id.* (quoting *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 196 (1989)).

In *DeShaney,* the Supreme Court was asked to determine "when, if ever, the failure of a state or local government entity or its agents to provide an individual with adequate protective services constitutes a violation of the individual's due process rights." *DeShaney*, 489 U.S. at 194. Specifically, in that case, the Court decided whether a county was responsible for not acting in response to known harms suffered by a minor child who was abused by his father after the child had been in the county's care and custody, and released. The Court announced the well-established rule that a state or local government's failure "to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. Specifically, the Court held that:

> [N]othing in the ... Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.... Its purpose was to protect the people from the State, not to ensure that the State protects them from each other.

*Id.* at 195-96. Pursuant to *DeShaney*, it is clear that a government's constitutional duty to protect

or provide medical care exists only during such time as an individual is harmed by the government or its officials while under the government's care, custody or protection.  Here, the Plaintiff alleges that Mr. Elam's death occurred approximately four-and-a-half hours after his release from pretrial detention when he fell from a fourth-floor balcony at a private residence.  Thus, the Defendant is not liable for providing protection or medical care during detention, and the Plaintiff does not state a claim for violation of the Fourteenth Amendment's Due Process Clause, unless the Defendant's alleged conduct falls under an exception to the *DeShaney* rule.

The Plaintiff argues that Defendant's alleged conduct falls under *both* exceptions to *DeShaney*'s general rule, as recognized by the Tenth Circuit: (1) the special-relationship doctrine, and (2) the state-created or enhanced danger doctrine.  *See Uhlrig v. Harder*, 64 F.3d 567, 571-72 (10th Cir.1995), *cert. denied*, 516 U.S. 1118 (1996).  The Court will analyze each in turn.

    1.    *Special Relationship*

"A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient." *Id.* at 572.  As stated by the Supreme Court:

> [I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, ***not its failure to act to protect his liberty interests against harms inflicted by other means***.

*DeShaney,* 489 U.S. at 200 (emphasis added).

Plaintiff contends that Defendant limited Mr. Elam's ability to care for himself by detaining him for one-and-a-half hours after his arrest and, during that time, could have provided Mr. Elam with medical care, could have determined whether he was still intoxicated, could have determined

9

whether he was suicidal or otherwise mentally unstable, could have warned him that he needed to take steps to ensure his own safety, and could have called someone to pick up Mr. Elam, but Defendant did nothing. The Court is not persuaded and disagrees that Defendant's alleged inaction during Mr. Elam's detention created a constitutional duty under the special relationship doctrine.

As set forth above, *DeShaney* makes it clear that a government's duty to protect from harm extends only during the time that the government holds an individual against his will. *See also Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 924 (10th Cir. 2012) (finding no special relationship where decedent *voluntarily* checked himself into the hospital). The harm that befell Mr. Elam in this case occurred four-and-a-half hours after his release from detention at a private residence. The Plaintiff does not allege that Mr. Elam was ill or suffering any harm or injury during his detention; thus, Defendant had no duty to provide medical care. There are no allegations that Mr. Elam was contemplating suicide or experienced mental or emotional disabilities during his detention; thus, Defendant had no duty to seek mental health assistance for Mr. Elam. The Plaintiff points to nothing supporting her argument that Defendant had a constitutional duty to determine whether Mr. Elam was sober or warn him of unknown risks of harm upon his release. Even if Defendant somehow knew that Mr. Elam, after his release, might increase his blood alcohol level, fall and harm himself, however, a defendant's knowledge of the risk of harm is not relevant to the determination of whether a special relationship existed. *See Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 994 (10th Cir. 1994) ("foreseeability cannot create an affirmative duty to protect" under the special relationship doctrine "when plaintiff remains unable to allege a custodial relationship"). Indeed, inaction by the state in the face of a known danger will not trigger the constitutional duty to protect. *Id.* at 995 (citing *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.), *cert. denied*, 510 U.S. 947 (1993)).

In this case, the Plaintiff fails to allege a "special relationship" between Mr. Elam and Defendant sufficient to impose upon Defendant a duty of care during detention for the protection from harm suffered by Mr. Elam several hours after his release from detention.

### 2. *State Created or Enhanced Danger*

The Supreme Court first mentioned the "state created or enhanced danger" doctrine in *DeShaney*:

> While the State may have been aware of the dangers that Joshua faced in the free world, *it played no part in their creation, nor did it do anything to render him any more vulnerable to them.*

*DeShaney,* 489 U.S. at 201 (emphasis added). Since *DeShaney*, the Tenth Circuit addressed directly the state-created or enhanced danger doctrine in *Graham*, 22 F.3d at 994, concerning acts of violence at two schools. At one school, a student was shot and killed by another student and, at the other school, a student was stabbed by a fellow student. The students' parents brought separate Section 1983 actions against their respective school districts, which were consolidated on appeal.

The *Graham* court noted that "*DeShaney* ... le[ft] the door open for liability in situations where the state creates a dangerous situation or renders citizens more vulnerable to danger." 22 F.3d at 995 (citing *Reed*, 986 F.2d at 1125 and *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993)). "This state-created danger doctrine necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *Id.* (citing *L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir.1992), *cert. denied,* 508 U.S. 951 (1993)). Thus, the *Graham* court affirmed the lower court's dismissal of the plaintiffs' complaints based in part on the plaintiffs' failure to identify any affirmative actions by defendants that created or increased the danger to the victims.

Later, in *Uhlrig*, the Tenth Circuit was asked to determine whether a state's decision to

11

terminate a special unit prior to the murder of a therapist by a mental hospital patient created the danger that led to the therapist's death. 64 F.3d at 571. The *Uhlrig* Court articulated a five-part test to determine whether a defendant created or enhanced the danger to the plaintiff: (1) whether plaintiff was a member of a limited and specifically definable group; (2) whether defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (3) whether the risk to plaintiff was obvious or known; (4) whether defendant acted recklessly in conscious disregard of that risk; and (5) if such conduct, when viewed in total, "shocks the conscience" of federal judges. *Id.* at 574.

The Tenth Circuit later held in *Armijo v. Wagon Mound Public Schs.*, 159 F.3d 1253 (10th Cir. 1998) that, in addition to meeting *Uhlrig*'s five-part test, a plaintiff must also show that the state entity and the individual defendants created the danger or increased the plaintiff's vulnerability to the danger in some way. *Id.* at 1263. "In other words, if the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed." *Id.*

In this case, Plaintiff alleges that Defendant, knowing Mr. Elam was intoxicated and under the influence of narcotics, released him without testing to determine whether he was sober at that time, failed to warn Mr. Elam that his intoxication could impair his decision-making ability and should call someone to pick him up, and failed to call someone to pick up Mr. Elam after his release. Response, docket #14 at 7. Considering the factors of *Uhlrig*'s five-part test, (1) there are no allegations that Mr. Elam is a member of a limited and specifically definable group; (2) Plaintiff alleges that Defendant placed Mr. Elam at substantial risk of a known serious, immediate and proximate harm by releasing him still under the influence of alcohol and narcotics, in a possible state

of depression or anxiety, and potentially having thoughts of suicide; (3) Plaintiff alleges that the risk Mr. Elam might harm himself after release while under the influence of alcohol and narcotics was both obvious and known; (4) Plaintiff alleges the Defendant acted recklessly by failing to call someone to pick up Mr. Elam, to provide him medical care, or to warn him of the risks of danger; and (5) Plaintiff argues that "the unjustified and arbitrary refusal of detention officers to lend aid to Mr. Elam who was clearly impaired and unable to care for himself is fundamentally offensive to 'a sense of justice' and 'shock the conscience' that thereby violates the [sic] Mr. Elam's constitutional rights."  Response, docket #14 at 8.

This Court is dubious that Plaintiff will be able to establish the *Uhlrig* factors, particularly factors (1), (2) and (5), but concludes that Plaintiff fails to allege Defendant "created the danger or increased the plaintiff's vulnerability to the danger in some way."  *Armijo*, 159 F.3d at 1263. Rather, by releasing Mr. Elam after a one-and-a-half hour detention, the Defendant simply placed Mr. Elam in the same position he was in at the time he was arrested and detained.[2]  Plaintiff's allegations fail to reflect that Defendant acted affirmatively in creating or enhancing the ultimate danger suffered by Mr. Elam – that several hours after his release, Mr. Elam's blood alcohol level was increased to .243 and he fell from a fourth-story balcony.  Nothing in the Complaint suggests that Defendant *increased* Mr. Elam's vulnerability to the ultimate danger; the Plaintiff does not allege that Defendant had anything to do with Plaintiff's increased blood alcohol level or his presence on the fourth-floor balcony.  To the extent the Plaintiff suggests Mr. Elam committed suicide, there is no indication in the Complaint that such risk was obvious or that Defendant would

---

[2]Actually, absent any affirmative act by the Defendant, it would not be unreasonable to assume that Mr. Elam's blood alcohol level decreased with the passage of time while he was detained.

have known of Mr. Elam's intent.

In fact, even if Defendant had known of any intent by Mr. Elam to commit suicide, Defendant still may not be liable. In a recent First Circuit case, in which the plaintiff mother alleged violations of the Due Process Clause by a town and its officials who arrested and detained her son following a car accident, Retired Justice Souter, sitting by designation, held that the complaint failed to allege a constitutional violation. *See Coscia v. Town of Pembroke*, 659 F.3d 37, 38 (1st Cir. 2011). In *Coscia*, during the son's detention, he repeatedly threatened to commit suicide and even went so far as to lick an electrical outlet at the facility. *Id.* The defendants restrained the son, but did not have him examined by medical staff, and released him on his own recognizance approximately seven hours after his arrest. *Id.* at 39. Fourteen hours later, the son committed suicide by stepping in front of a train. *Id.* As in this case, the *Coscia* plaintiff alleged that defendants' "failure to take appropriate action to have [the son] evaluated by medical professionals caused his death." *Id.*

Justice Souter determined that, even assuming the plaintiff would be able to prove the necessary causation in fact of foreseeable harm, "[w]ith the restoration of the detainee's liberty, then, the legal chain of preventive (as distinct from state-created) causation must be taken to have ended." *Id.* at 41. According to Justice Souter:

> The causation alleged is not that the absence of medical attention during custody was in any way creative of suicidal vulnerability by working a change in him for the worse, but consists rather of a failure to prevent the consequence of his preexisting suicidal disposition, *a failure to intervene in a way that would change him, or his circumstances, for the better in the period after his release*. We think this claim of causation leads to a liability beyond what due process imposes, for although the existing law does recognize a custodial duty to take some preventive action, its rationale does not extend official protective responsibility as far as the plaintiff would take it.

14

*Id.* at 40 (emphasis added).

As in *Coscia*, the Plaintiff's allegations here that Defendant failed to provide medical care, failed to test for or warn Mr. Elam of any risks, and failed to call someone to pick up Mr. Elam constitute mere allegations of "a failure to intervene in a way that would change [Mr. Elam], or his circumstances, for the better in the period after his release," which are insufficient to support a constitutional claim for relief. *See id.*; *see also Armijo*, 159 F.3d at 1263 ("even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed.").

This Court concludes that the Plaintiff fails to allege in her first claim sufficient "state action" by the Defendant to establish liability for the harms suffered by Mr. Elam after his release from detention, pursuant to *DeShaney* and its progeny. Consequently, this Court respectfully recommends that the District Court grant the Defendant's motion to dismiss Plaintiff's first claim for Denial of Care in violation of the Fourteenth Amendment.

**II.     Should the Plaintiff's Second Claim for Relief be Dismissed?**

For her second claim, the Plaintiff alleges in part, "[t]he City of Aurora was aware that it was a practice, custom or policy to release Aurora Detention Center's detainees charged with non-violent crimes when the Aurora Detention Center was crowded on weekends[,] and were [sic] indifferent as to whether [a] detainee was suicidal or otherwise mentally unstable, drunk or under the influence of drugs." Complaint, ¶ 29, docket #1. Moreover, the Plaintiff states, "[t]he City of Aurora failed to provide adequate training and/or supervision of personnel to ensure that detainees that were suicidal, drunk and/or under the influence of drugs were not released until they were sober, stable and able to take care of themselves" (*id.*, ¶ 31), and "[t]he deliberate indifference by City of Aurora

constitutes cruel and unusual punishment contravening the Eighth Amendment of the Constitution and the Due Process rights of the Fourteenth Amendment of the Constitution" (*id.*, ¶ 32). Further, the Plaintiff alleges "[n]ot having a policy in place[,] or not enforcing that policy if it is in place, that requires that detainees remain incarcerated until they are completely sober, no longer [under] the influence of drugs and are either mentally stable or are released to competent adults with instructions to watch and observe the detainee for signs of depression, anxiety and suicidal thoughts, is a violation of the detainee's rights under [the] Eighth Amendment of the Constitution and the Due Process rights of the Fourteenth Amendment of the Constitution." *Id.*, ¶ 33.

Under Section 1983, a municipality may be held liable for adopting an official policy, practice or custom that causes a violation of constitutional rights. *See Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). A plaintiff can establish a "municipal policy, practice or custom" through the following means: (1) an officially promulgated policy; (2) a custom or persistent practice; (3) deliberately indifferent training that results in the violation of a plaintiff's federally protected rights; (4) a single decision by an official with final decision-making authority;  or (5) ratification by an official with final decision-making authority of subordinates' decisions. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010).

The Court construes the Plaintiff's second claim (in part) as alleging the unconstitutional affirmative state actions (policy, custom or practice) of releasing detainees when the facility is overcrowded (despite whether the detainees are drunk, sober, suicidal or mentally unsound) and

deliberately failing to train detention facility employees on proper release.[3]  However, Defendant construes the Plaintiff's second claim as "brought pursuant to the Eighth Amendment and alleg[ing] that Elam's release under the conditions stated above [failure to provide medical care and/or to ensure that Elam was sober and able to care for himself prior to releasing him] constituted cruel and unusual punishment."  Motion, docket #9 at 2.  Defendant's only legal argument concerning this second claim is that the Eighth Amendment does not apply to Mr. Elam as a pretrial detainee.  *See* Motion, docket #9 at 6.

The Court concludes that the present motion does not address the Plaintiff's second claim for relief for Defendant's alleged enforcement of an unconstitutional policy, custom or practice and for Defendant's alleged deliberately indifferent training of detention center personnel.[4]  Plaintiff clearly titles her second claim, "Unlawful Policy, Custom or Habit," and makes the allegations quoted above.  However, Defendant mentions nothing about, and makes no argument supporting, dismissal of a claim alleging an unconstitutional policy, custom or practice or deliberately indifferent training in violation of the Fourteenth Amendment.  Although the Court may *sua sponte* analyze pleadings to determine whether it has subject-matter jurisdiction over the action, the Court may not, on its own, analyze a pleading pursuant to Fed. R. Civ. P. 12(b)(6).

The parties raise no jurisdictional issues in the briefing, and the Court perceives none in this

---

[3] These alleged actions are separate and distinct from the alleged *in*actions asserted in the Plaintiff's first claim of failure to provide medical care, failure to test, and failure to call a friend or family member before release.

[4] Defendant, in the present motion, does not specify whether it seeks a partial dismissal of the Complaint or seeks dismissal of the Complaint in full.  However, based upon Defendant's statement, "Plaintiff's allegations fail to state a claim upon which relief may be granted and, therefore, must be dismissed with prejudice" (Motion, docket #9 at 2), the Court assumes the Defendant seeks dismissal of the Complaint in full.

17

case. Accordingly, to the extent that Defendant seeks to dismiss Plaintiff's second claim for relief alleging an unconstitutional policy, custom or practice or deliberately indifferent training in violation of the Fourteenth Amendment, the Court respectfully recommends that Defendant's motion be denied.

## **CONCLUSION**

Accordingly, the Court respectfully RECOMMENDS that Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim upon Which Relief may be Granted [filed October 31, 2011; docket #9] be **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Grant the Defendant's motion to dismiss Plaintiff's Eighth Amendment claims;

(2) Grant the Defendant's motion to dismiss Plaintiff's first claim for relief for Denial of Care in violation of the Due Process Clause of the Fourteenth Amendment; and

(3) To the extent it seeks to do so, deny the Defendant's motion to dismiss Plaintiff's second claim for relief for enforcement of an unlawful policy, custom or practice and deliberately indifferent training in violation of the Due Process Clause of the Fourteenth Amendment.

Dated at Denver, Colorado, this 17th day of May, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge