IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-02156-RBJ-MEH

VALERIE A. ELAM, individually and as Personal Representative of the
Estate of Rickey Lee Elam,

    Plaintiffs,

v.

THE CITY OF AURORA, a municipal corporation,

    Defendant.

---

### ORDER

---

The case is before the Court on defendant's motion to dismiss [docket #9] and the magistrate judge's recommendation that the motion be granted in part and denied in part [#20].

**Facts**

Plaintiff alleges, and for purposes of the pending motion the Court accepts as true, the following facts. On August 22, 2009 at approximately 5:00 a.m. Aurora, Colorado police officers arrested Rickie Lee Elam on charges of running a red light and driving under the influence of alcohol. He told a police officer that he was taking Amoxicilin and Vicodin. Mr. Elam was booked into the Aurora Detention Center where a blood test begun at 6:09 a.m. revealed a Blood Alcohol Content ("BAC") of at least 0.164. Under Colorado law a BAC of more than 0.05creates a permissible inference that the driver was impaired, and a BAC of 0.08 creates a permissible inference that the driver was under the influence of alcohol.

At approximately 7:30 a.m. Mr. Elam was released by the Aurora Detention Center. His wife and family were not called to pick him up, and he was released unsupervised. At

approximately 12:00 noon that same day Mr. Elam fell to his death from a fourth floor balcony located elsewhere in Aurora. At the time of his death he had a BAC of 0.243. The Adams County Coroner could not determine whether Mr. Elam's death was the result of suicide or an accident.

**Case History**

Mr. Elam's wife, through counsel, brought the present suit individually and as the Personal Representative of his estate pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Section 1983 makes relief in the form of money damages available to persons whose constitutional rights have been violated by any person acting under color of state law. Section 1988, as possibly relevant here, authorizes an award of attorney's fees including expert fees to the prevailing party in a section 1983 action.

Plaintiff submits two claims for relief. In what she labels "First Cause of Action – Denial of Care," she asserts that the defendant City of Aurora, acting through personnel at the Aurora Detention Center, had a duty under the Eighth and Fourteenth Amendments to the United States Constitution "to provide adequate medical care until [Mr. Elam] was sober and in a position to take care of himself; to ensure that he was not suicidal; to ensure he was released to a competent adult; and, warn Mr. Elam and/or the adult that picked him up that he could be subject to depression, anxiety and suicidal thoughts for the next twenty-four hours after being arrested and incarcerated." Complaint [#1] ¶25.

In what plaintiff labels her "Second Cause of Action – Unlawful Policy, Custom or Habit," she alleges that the defendant "failed to institute, maintain or control the Aurora Detention Center to ensure that only detainees that were mentally stable, sober and not under the influence of drugs were released," and that defendant "failed to provide adequate training and /or

supervision of personnel to ensure that detainees that were suicidal, drunk and/or under the influence of drugs were not released until they were sober, stable and able to take care of themselves." *Id.* ¶¶30, 31.  She continues, "[n]ot having a policy in place or enforcing that policy if it is in place, that requires that detainees remain incarcerated until they are completely sober, no longer (sic) the influence of drugs and are either mentally stable or are released to competent adults with instructions to watch and observe the detainee for signs of depression, anxiety and suicidal thoughts, is a violation of the detainee's rights under the [Eighth and Fourteenth Amendments]." *Id.* ¶33.

Defendant moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief upon which relief could be granted [#9].  After full briefing the motion was referred to a magistrate judge.  On May 17, 2012 the magistrate judge issued his recommendation that this Court grant the motion insofar as it pertained to Eighth Amendment claims (as contained in both of plaintiff's claims for relief); grant the motion to dismiss the First Claim in its entirety; but deny the motion to dismiss the Second Claim insofar as that claim asserted a violation of the due process clause of the Fourteenth Amendment. [#20]  On June 1, 2012 the defendant filed an objection to the magistrate judge's order insofar as it recommended denial of the motion. [#21].  Plaintiff has responded to the objection. [#23].

**Standard of Review**

When a Rule 12(b)(6) motion is filed, the Court must construe all well-pleaded facts in favor of the plaintiff and then determine whether the complaint states a claim upon which relief can be granted.  The Court may review a recommendation of a magistrate judge on a dispositive motion "under any standard it deems appropriate" to the extent an objection to the recommendation was not timely filed.  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district

3

court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings"). However, the district court must determine de novo any part of the magistrate judge's recommendation to which a proper objection has been made. Fed. R. Civ. P. 72(b)(3).

**Conclusions**

Objections to the magistrate judge's recommendation were due 14 days after service. Defendant's objection was filed on the 15th day after the recommendation was issued in this case. However, because of the additional time apparently allowed by Rule 6(d), and in the absence of any suggestion by the plaintiff that the objection was untimely, the Court deems the objection to be timely. The Court finds no clear error of fact or law in those portions of the magistrate judge's order to which neither party has objected. Accordingly, the Court accepts and adopts the recommendation to that extent.

What remains is the portion of plaintiff's Second Claim in which she alleges that the defendant violated the decedent's rights under the Fourteen Amendment to the United States Constitution which provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law." There is no dispute that the City of Aurora, its Detention Center, the employees of the Detention Center, and the police officers involved in Mr. Elam's arrest, all acted under color of state law. However, there must have been (1) a deprivation of life, liberty or property (2) without due process of law. No liberty interest is invoked here; although Mr. Elam was deprived of liberty when he was arrested and detained, his liberty was restored when he was released. He presumably was not permitted to drive away from the Detention Center, but given his BAC, that "deprivation" of a property right was not without due process.

The constitutional violation asserted here has to be the deprivation of Mr. Elam's life without due process of law. However, it is hard to envision how a constitutional claim can exist on these facts. The Detention Center did not deprive Mr. Elam of his life. It released him from the jail. It can be debated whether putting a man back on the street with a BAC at this level was wise. However, even if the Court were to assume that releasing Mr. Elam was negligent, the legal issue framed by the Complaint in this case is not negligence. *See Daniels v. Williams,* 474 U.S. 327, 328 (1986)("the Due Process Clause is

4

simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property")(emphasis in original).

The Due Process Clause generally does not impose an affirmative obligation on state actors to ensure that an individual's interest in life, liberty or property is not deprived other than by the state itself. *See DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 195 (1989)(social workers had no constitutional duty to remove a child from a home despite receiving multiple complaints that the father was physically abusing the child). If the State affirmatively creates a dangerous situation or renders an individual more vulnerable to danger, there can be a constitutional issue under the substantive aspect of the Due Process Clause. *See Graham v. Indep. School Dist. No. I-89,* 22 F.3d 991, 995 (10th Cir. 1994). Here, however, the jail neither created the dangerous situation nor rendered Mr. Elam more vulnerable to danger. Mr. Elam was intoxicated when he was arrested. "[I]f the danger to the plaintiff existed prior to the state's intervention, then even if the state put plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed." *Armijo v. Wagon Mound Public Schools,* 159 F.3d 1253, 1263 (10th Cir. 1998). Actually, assuming as I do that Mr. Elam was not permitted to drive away, defendant reduced his vulnerability to danger. After leaving the jail, Mr. Elam apparently consumed more alcohol, as his BAC was significantly higher when, some four and a half hours later, he either fell or jumped to his death. The Court cannot assign constitutional blame to the defendant for Mr. Elam's unfortunate choices.

If there were some indication of suicidal ideation -- and plaintiff does not allege that there was or even that Mr. Elam necessarily committed suicide -- it might reasonably be considered to have been irresponsible to have released him. Even then, however, it is doubtful that there would be constitutional liability. In *Coscia v. Town of Pembroke, Mass.,* 659 F.3d 37 (1st Cir. 2011), an individual who was arrested following a one-car accident told an officer in the patrol car that he intended to throw himself in front of a train. He continued to make suicidal threats after arriving at the station. The police followed an evaluation protocol that showed Coscia to be a high suicide risk. Nevertheless, without having him seen by a doctor, he was released to the custody of a friend. Approximately 14 hours later he committed

5

suicide by stepping in front of a train. Coscia's estate sued the town and individual police officers and supervisors, claiming violations of Fourteenth Amendment due process by reason of defendants' failure to have him evaluated by medical professionals before releasing him. The court rejected the claim, and while the facts are not on all fours with the present case, the court's reasoning is persuasive.

The court acknowledged that "a state and its subdivisions are under a substantive obligation imposed by the Due Process Clause of the Fourteenth Amendment to refrain at least from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health." *Coscia,* 659 F.3d at 39. However, there was no claim that treatment by the police gave rise to a suicidal inclination when Coscia otherwise would have had none. Rather, the claim concerned a failure to prevent the consequence of a preexisting suicidal disposition. Due process liability for harm that is avoidable after an individual's release from custody "could be recognized only if it would be fundamentally or shockingly unreasonable for the authorities to disclaim . . . responsibility for whatever may befall an erstwhile detainee once he again is free from restrictions on acting effectively for himself." *Id.* at 41. *Cf. Uhlrig v. Harder,* 64 F.3d 567, 571 (10th Cir. 1995)("In order to prevail on their substantive due process claim, Plaintiffs must demonstrate that the state acted in a manner that 'shock[s] the conscience.'"(internal quotation marks omitted). The court in *Coscia* did not find that the defendants' release of Mr. Coscia was fundamentally or shockingly unreasonable. Rather, "[w]ith the restoration of the detainee's liberty, then, the legal chain of preventive (as distinct from state-created) causation must be taken to have ended. We accordingly hold that in the absence of a risk of harm created or intensified by state action there is no due process liability for harm suffered by a prior detainee after release from custody in circumstances that do not effectively extend any state impediment to exercising self-help or to receiving whatever aid by others may normally be available." 659 F.3d at 41.

Plaintiff distinguishes *Coscia* by pointing to the fact that he was released in the company of a friend.[1] If the Aurora Detention Center had refused to make, or had refused to permit Mr. Elam to make,

---

[1] Another distinction is that *Coscia* was an appeal from the trial court's denial of a motion by the individual defendants for judgment on the pleadings based upon qualified immunity. That is not an issue in the present case,

a call to his wife or a friend to pick him up, then it would be at least arguable that it had affirmatively acted in a manner that made him more vulnerable to danger. However, plaintiff does not make such an allegation. There is no suggestion that Mr. Elam had any desire to contact a relative or a friend, or that the defendant did anything to interfere with anything he desired other than, I have presumed, to get back behind the wheel. Release of a pre-trial detainee one and a half hours after he blew at 0.164 BAC cannot objectively be viewed as more unreasonable or shocking than releasing an individual who has made clear threats of committing suicide.

The magistrate judge cited the same cases and adopted the same reasoning in concluding that plaintiff's due process claim as stated in her First Claim should be dismissed. Recommendation [#20] at 7-15. I agree.

The Second Claim is couched in terms of (1) the Aurora Detention Center's custom, practice or policy to release detainees charged with non-violent crimes when the jail is crowded, (2) the City of Aurora's failure to require the Aurora Detention Center to ensure that only sober and mentally stable detainees will be released; and (3) the City's failure to provide adequate training and supervision of personnel to ensure that only sober and mentally stable detainees will be released. Complaint [#1] ¶¶29-31. The magistrate judge recommended that the Second Claim not be dismissed. I respectfully disagree.

The magistrate judge essentially interpreted this claim as addressing settled law that a municipality can only be held liable for constitutional violations if the violation was the result of a municipal policy, practice or custom. Recommendation [#20] at 16-17. *See Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 690-91 (1978). He noted that the motion to dismiss had not squarely addressed that issue. *Id.* at 17-18. However, the Second Claim is fundamentally the same as the First Claim. Both claims are based on the defendant's alleged "deliberate indifference" by failing either to detain Mr. Elam until he was sober or to release him to a competent adult. Even assuming the existence of policies, practices or customs as alleged, the claim begs the question whether there was a due

---

but in the end, it did not affect the outcome in *Coscia,* as the court held that the complaint did not state a constitutional claim against any defendant.

process violation at all. For the reasons set forth above with respect to the First Claim, I conclude that there was not.

**Order**

For the foregoing reasons, the motion to dismiss [#9] is granted. The recommendation of the magistrate judge [#20] is accepted and adopted in part. The Court enters its final written judgment dismissing this case and all claims therein with prejudice, each party to bear her and its own costs and attorney's fees.

DATED this 12th day of September, 2012.

BY THE COURT:

*Brooke Jackson*

_____

R. Brooke Jackson
United States District Judge